E-FILED
Tuesday, 27 September, 2016  11:30:30 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| SUSAN GAIL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   15-cv-1246 |
| | ) | |
| CAROLYN W. COLVIN, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION & ORDER

This social security disability benefits appeal is before the Court on the Motion for Summary Judgment (Doc. 9) filed by the Plaintiff, Susan Gail Brown, and the Motion for Summary Affirmance (Doc. 14) filed by the Defendant, Carolyn W. Colvin, Commissioner of Social Security. The motions have been fully briefed and are ready for ruling. For the reasons stated below, the decision of the Administrative Law Judge (the "ALJ"), John M. Wood, is REVERSED and REMANDED for rehearing.

### PROCEDURAL HISTORY

Ms. Brown ("Plaintiff") filed an application for Social Security Disability benefits ("DIB") on June 26, 2012, claiming disability since June 1, 2010 (R. 137-139). The application was initially denied on September 24, 2012 (R. 90-94) and upon reconsideration on January 23, 2013 (R. 97-100). Plaintiff then requested a hearing before an ALJ on February 28, 2013 (R. 102-103), which was held on January 8, 2014. (R. 32-64). The ALJ issued a written decision finding Plaintiff not disabled on January 27, 2014. (R. 13-27). Plaintiff requested review of the ALJ's decision by the

Appeals Council. (R. 12). The Appeals Council denied review on April 15, 2015 (R. 1-6), thereby making the ALJ's decision the final decision of the Commissioner of Social Security. Plaintiff filed this action on June 15, 2015, seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g). (Doc. 1).

**LEGAL STANDARDS**

## I.    Disability Standard

To be entitled to disability benefits under the Social Security Act, a claimant must prove he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). The Commissioner must make factual determinations in assessing the claimant's ability to engage in substantial gainful activity. *See* 42 U.S.C. § 405(b)(1). The Commissioner applies a five-step sequential analysis to determine whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999). The claimant has the burden to prove disability through step four of the analysis, i.e., he must demonstrate an impairment that is of sufficient severity to preclude him from pursuing his past work. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980).

In the first step, a threshold determination is made as to whether the claimant is presently involved in a substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. *Id.* At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the

claimant has an impairment that significantly limits his physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. 20 C.F.R. § 404.1520(c). If the claimant's impairments, considered in combination, are not severe, he is not disabled and the inquiry ends. *Id.* At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; if the elements of one of the Listings are met or equaled, the claimant is eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1.

If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps, after making a finding as to the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). At the fourth step, the claimant's RFC is evaluated to determine whether he can pursue his past work. 20 C.F.R. § 404.1520(a)(4)(iv). If he cannot, then, at step five, the Commissioner evaluates the claimant's ability to perform other work available in the economy, again using his RFC. 20 C.F.R. § 404.1520(a)(4)(v).

## II.    Standard of Review

When a claimant seeks judicial review of an ALJ's decision to deny benefits, the Court must "determine whether it was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The Court's review is governed by 42 U.S.C. § 405(g), which provides, in relevant part: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "'such evidence as

a reasonable mind might accept as adequate to support a conclusion.'" *Maggard*, 167 F.3d at 379 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In a substantial evidence determination, the Court will review the entire administrative record, but it will "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In particular, credibility determinations by the ALJ are not upset "so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). The Court must ensure that the ALJ "build[s] an accurate and logical bridge from the evidence to his conclusion," but he need not address every piece of evidence. *Clifford*, 227 F.3d at 872. Where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## FACTUAL BACKGROUND

### I.   Personal and Medical History

Plaintiff was fifty-two years old at the time of the onset of her claimed disability in June 2010. (R. 68). Her past jobs included being a phlebotomist, a department manager, a cashier-checker, a waitress, and a respiratory therapist (R. 55-56, 224). In her hearing before the ALJ, Plaintiff stated that fibromyalgia had actually rendered her incapable of working since 2008. The Court has not found anything in the record concerning Plaintiff's medical records before November 30, 2009.

4

In June 2010, Plaintiff reported to her treating physician, Dr. Zumwalt, that she was stressed out about her mother and her fingers. (R. 330). Her examination revealed that she had swollen nail beds and thyroid nodules. (*Id*.). She was noted to be suffering from fibromyalgia, gastritis/constipation, sinusitis and some other conditions not written legibly. (R. 329). Her medications included Prozac, Buspar, Xanax, Darvocet and others.

In June 2011, Plaintiff visited her physician complaining of generalized pains and aches despite being able to walk and swim daily. (R. 326). She described "sharp pain jolts" throughout her body and was tearful and anxious. She had begun taking care of her psychotic and abusive mother. Dr. Zumwalt diagnosed hypertension, asthma, anxiety, depression, gastritis, and fibromyalgia. (R. 326). She discussed setting up boundaries with her mother. Her medications were refilled. (R. 325-6).

In August 2011, Plaintiff reported swelling of the right wrist with pain in the wrist and forearm, occasional elbow pain, and ringing and fullness in her ears. (R. 324). She was using Xanax to sleep through the night. She also had trouble swallowing, which she attributed to a thyroid nodule. She was also stressed out about her daughter getting divorced. Her medications were refilled and updated laboratory blood testing was ordered.

In September 2011, Plaintiff presented at an emergency room for flank pain attributed to musculoskeletal pain. (R. 240). She was stabilized and released with a plan to take Norco, a medication used to relieve moderate to severe pain, and Norflex, which is used to treat muscle spasms/pain. (R. 244).

5

In January 2012, Plaintiff reported back and hand pain with fibromyalgia to her physician (R. 316). She had pain, weakness, or numbness in her arms, back, feet, hands, hips, legs, neck, and shoulders. (*Id*.). An examination revealed her hands were swollen and tender (R. 319). Her medications were refilled (R. 319-320). At her next visit in February 2012, she complained of severe malaise, swollen glands and a fever (R. 310). She again reported pain, weakness, or numbness in her arms, back, feet, hands, hips, legs, neck, and shoulders. (R. 310-11). She was advised to use antibiotics, Robitussin with codeine, a vaporizer, and rest (R. 314).

In August 2012, her first visit to Dr. Zumwalt since filing for disability benefits, Plaintiff described pain in her hands and arms and difficulty lifting anything due to severe pain radiating up to her elbows. (R. 391). She reported dropping objects at times yet retaining the ability to perform household chores with the assistance of her husband. (*Id*.). An examination revealed tenderness in the upper thoracic region of the spine, in the elbows, both wrists, both hands, and the hip. (R. 395). She was advised to use ice massages, to perform range-of-motion and muscle strengthening exercises, to walk, and to perform activities that do not exacerbate pain. (R. 396).

Dr. Zumwalt completed a Multiple Impairment Questionnaire for the Plaintiff (R. 349-358). He diagnosed depression, migraines, chronic obstructive pulmonary disease ("COPD"), myalgia/myositis, anxiety, osteoarthritis, and insomnia <u>but did not mention</u> fibromyalgia. He wrote that Plaintiff has deep aches in the upper and lower back, and generalized pain in the arms and feet (R. 350). Dr. Zumwalt opined Plaintiff was limited to sitting for only two hours and standing for only one hour in total for

an eight hour workday. (R. 351). He wrote that Plaintiff could never lift or carry more than five pounds (R. 352). He also wrote that she has significant limitations performing repetitive reaching, handling, fingering, and lifting due to hand and arm swelling. (*Id.*). However, he failed to give any information on the extent of those limitations nor did he explain the basis for his opinion that Plaintiff was limited to sitting for only two hours and standing for only one hour in total for an eight hour workday. He noted that Plaintiff has "good days" and "bad days" and that she is prone to infections due to chronic Epstein Barr virus. (R. 355).

On August 22, 2012, Plaintiff was seen for an official evaluation of probable fibromyalgia. (R. 397). The record states "she has been having [fibromyalgia] for the past four years but states the doctor has not formally diagnosed her… She was filing for disability and was told by the NP (the Court assumes this means Nurse Practitioner) at Dr. Zumults[sic] office that she needed to be seen by a rheumatologist for joint pain." (R. 397). The notes show Plaintiff described symptoms of swollen glands, pain in her back, "knots" in her muscles, pain all over her body that "moves around," as well as stiffness in her back and hips, right elbow swelling and pain with numbness and tingling, and fatigue all day. (*Id.*). An examination revealed cervical tenderness, lumbosacral tenderness, tenderness of the paraspinal muscles, tenderness in the medial joint line of the knees, and diffuse positive tender points (R. 400-401) but no warmth, swelling or erythema. Plaintiff was diagnosed with pain in her joints, hand pain, pain in her muscles, fatigue, back pain, and facial rash. (R. 402-403). She was prescribed Tramadol (a pain reliever), levothyroxine (a thyroid

medication), cyclobenzaprine (a muscle relaxant), aspirin, folic acid, vitamin E and Benadryl Allergy. (R. 403).

In a letter dated December 21, 2012, Dr. Zumwalt stated that Plaintiff was presently[1]  unable to work due to fibromyalgia, Epstein Barr syndrome, asthma, depression, and anxiety; that she suffered from chronic back and shoulder pain with weakness and pain in both her hands as well as tendonitis in her elbows; that she also had chronic fatigue due to her Epstein Barr syndrome, depression, and anxiety. (R. 421). Dr. Zumwalt wrote that Plaintiff had only limited results with medications and that her inability to work was expected to continue indefinitely. (*Id*.).

At a follow-up appointment with Dr. Zumwalt in March 2013, Plaintiff stated she was having a flare-up in her fibromyalgia with pain and headaches (R. 437). A physical examination revealed bilateral upper extremity tenderness and grip strength weakness (R. 436). Dr. Zumwalt diagnosed fibromyalgia. He added Neurontin and Cymbalta to Plaintiff's medications. (*Id*.). Despite this, on April 15, 2013, Plaintiff described persistent muscle pain in the back bilaterally, arms, hands, legs, and feet. (R. 438). An examination revealed tenderness of multiple areas, including the shoulders, hands, and hips. (R. 442).

---

[1] The Plaintiff writes in her memorandum in support of her motion for summary judgment that Dr. Zumwalt wrote that Plaintiff was unable to work <u>since</u> 2010 due to fibromyalgia. (Doc. 10 at 4 (emphasis added)). That is incorrect. Dr. Zumwalt wrote Plaintiff was <u>presently</u> unable to work due to fibromyalgia and later in the note he wrote that she had not worked since 2010. The Court does not know whether this is a mere oversight or a deliberate attempt to mischaracterize evidence but it does not appreciate such misstatements concerning evidence.

On September 7, 2012, an SSA Consultative Examiner, Dr. Ausfahl, evaluated Plaintiff (R. 376-80). Dr. Ausfahl diagnosed a history of low back pain, neck pain, fibromyalgia, asthma, COPD, hypertension, hypothyroidism, and chronic Epstein Barr (R. 379). Dr. Ausfahl noted that Plaintiff suffered no deformities in her chest, no abnormalities in her breathing/lungs, no joint swelling, redness, or tenderness in her upper extremities, no limitation of motion in any joint, and no edema (R. 378). As for her spine, he noted no scoliosis or tenderness. (R. 379). He noted that Plaintiff displayed a lot of flexibility during her examination. (R. 381-83). Plaintiff did not exhibit any edema or tenderness in her lower extremities either. (R. 379). While Ausfahl failed to give an opinion on Ms. Brown's functional capacity, he observed that she had no limitations getting on or off the table, tandem walking, walking on her toes, walking on her heels, squatting and arising, and did not need or use any assistive devices. (R. 379).

At her hearing, Plaintiff testified that she has been unable to work because she has problems lifting, primarily due to fibromyalgia. (R. 38). She stated she last worked in 2008, but received wages from her husband's business despite doing no work through 2010. (R. 38). She testified that she returned to work in 2011, but only for two weekends before she found she could not do the work. (R. 38-9). Plaintiff also testified that she needs to lie down during the day and has problems processing information. (R. 39-40). She described symptoms of swelling and "pulling" in her muscles as well as "knots" in her forearms that prevent her from lifting more than a bag of sugar. (R. 47). She also has pain throughout her "complete body." (R. 48).

Nothing in particular precipitates her pain. (*Id*.). Plaintiff estimated she can walk for approximately ten minutes before she needs to sit and she can sit for fifteen to twenty minutes. (R. 49). She also reported being limited to standing for thirty minutes, then she needs to lie down for about an hour to an hour-and-a-half. (*Id*.). Her pain also interferes with concentration. (R. 51).

Plaintiff testified that she lives with her husband and mother. (R. 36). She rarely drives except to go to medical appointments. (R. 37). In the morning, she gets cereal for herself and her mother and takes her medication, but then needs to lie down because "that is just kind of wearing." (R. 41). She gets up around lunchtime and then does a "little housecleaning." (*Id*.). Plaintiff's mother had a stroke, but has no problems physically. (R. 42). Plaintiff stated she can do laundry, but her mother folds the clothes. (R. 44). Her husband usually loads the dishwasher and does most of the vacuuming. (*Id*.). Her husband helps her with cleaning bathrooms and goes grocery shopping with her. (R. 45-6). However, he travels for work for five days at a time sometimes and works six days a week in general. (R. 47). Plaintiff testified that her consultative examination with Dr. Ausfahl lasted only about ten minutes only consisted of being asked to zip a zipper and button buttons (R. 45-5, 52). He recorded the session as lasting twenty minutes. (R. 379).

A vocational expert ("VE") testified that an individual of Plaintiff's age, education, and work history who was limited to light exertional work with no more than frequent manipulations, could perform Plaintiff's past work as a department manager and phlebotomist. (R. 56-7). The VE stated that an individual needs to stay

on task 90 to 95 percent of the day to meet competitive work standards of an employer. (R. 59). If an individual missed work more than once a month, she would be unable to sustain employment. (*Id.*).

## II.    The ALJ's Decision

The ALJ found that despite severe impairments of fibromyalgia, history of hypertension, Epstein Barr syndrome, asthma, GERD, and a history of neck nodule surgery (R. 18), Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can perform manipulative functions frequently and she must avoid concentrated exposure to pulmonary irritants. (R. 20-5). Based on this RFC, the ALJ concluded Ms. Brown can perform her past relevant work as a department manager and as a phlebotomist (R. 25-6). The ALJ's decision will be discussed in much greater detail below.

## DISCUSSION

Plaintiff primarily contends that the ALJ's decision should be overturned because he purportedly failed to properly determine her RFC by not giving her treating physician's testimony proper weight. An ALJ must consider medical opinions offered in support of a claim of disability. 20 C.F.R. § 404.1527(c). Generally, an ALJ will give controlling weight to the opinion of a treating source when the ALJ finds such an opinion to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and… not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of

examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) citing 20 C.F.R. § 404.1527(c). It is important to understand that an ALJ is not obligated to give a treating physician's opinion controlling weight in his decision. "If the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Here, the ALJ discussed the opinion of Plaintiff's treating physician, Dr. Zumwalt, but he did not attribute it controlling weight because he found that it 1) was not supported by the objective medical evidence in the record, 2) seemed to depend heavily on the Plaintiff's subjective claims of her symptoms and her functionality, and 3) was conclusory.

Plaintiff claims that the ALJ gave "no weight" to Dr. Zumwalt's opinion but this is not correct. The ALJ found Dr. Zumwalt's opinion was "not credible" because of the three reasons stated above. (R. 25). The ALJ discussed Dr. Zumwalt's opinion in substantial depth and gave reasons as to why he was giving it less weight than the other medical information before him. He wrote:

> This doctor has not built a bridge between medical findings and any particular job related limitation. His treatment notes do not support his opinion of significant limitations with lifting and standing. His examination performed in August 2012 showed her musculoskeletal system was normal except for some tenderness to both elbows, wrists, hips, and hands (Exhibit 10F, 9). He does not note any limited range of motion, muscle atrophy, or reduced strength that would support such stringent work related limitations. His opinion is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. The doctor apparently relied quite heavily on the subjective

12

report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints, i.e. they are not supported by the objective medical findings or her daily activities. <u>Dr. Zumwalt is a family practice physician, not a rheumatologist, and his opinion appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise.</u> Conclusions made by Dr. Zumwalt <u>without corresponding medical findings</u> are not given controlling weight under the principles set forth at 20 CFR 404.1527 and 416.927 and SSR 96-5p. More weight is given to the objective medical findings and reasonable limitations deduced therefrom. Therefore, the opinion of Dr. Zumwalt is not credible to the extent it is inconsistent with the residual functional capacity assessment reached in this decision.

(R. 25 (emphasis added)). Plaintiff argues that the ALJ disregarded Dr. Zumwalt's finding that Plaintiff was experiencing tenderness in multiple points. That is incorrect as the passage above demonstrates the ALJ noted Dr. Zumwalt's observation that Plaintiff was experiencing tenderness in her elbows, wrists, hips, and hands. This is why the ALJ found Plaintiff's fibromyalgia was a severe impairment that could be reasonably expected to cause her alleged symptoms despite the agency opinions that Plaintiff did not even have any severe mental or physical impairments. (R. 25).

In Social Security Ruling 16-3p, 81 Fed. Reg. 14168, which took effect in March, 2016 and has retroactive application as explained by another Court in this district, *see Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214 (C.D. Ill. Aug. 10, 2016), it is explained that a two-step process is utilized to evaluate an individual's alleged impairment-related symptoms. The first step involves determining whether there is an underlying medically determinable impairment that could reasonably be

expected to produce an individual's alleged symptoms. The second step involves evaluating the intensity and persistence of those symptoms to determine the extent that they limit the claimant's ability to perform work-related activities. 81 Fed. Reg. 14167. There is substantial evidence that Plaintiff's fibromyalgia was a severe impairment and the ALJ concluded as much. However, the ALJ did not find that Plaintiff's symptoms limited her as severely as she claimed. The question is whether that aspect of the ALJ's conclusion was supported by substantial evidence. The Court finds that it was not.

The ALJ's decision cannot stand because it is based on numerous faulty premises. The first error that stands out is that his decision does not mention Social Security Ruling 12-2p, *Titles II and XVI: Evaluation of Fibromyalgia.* 77 Fed. Reg. 43640. This particular ruling purports to inform the public of how the Social Security Administration develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how it evaluates fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act. Instead, the ALJ considered Social Security Ruling 03-02p, which is entitled "*Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome*" and does not contain any reference to fibromyalgia. Neither party addressed this error in their briefing; probably because despite not explicitly mentioning SSR 12-2p, the ALJ nevertheless managed to implement SSR 12-2p's instruction in his decision. SSR 12-2p directs an ALJ to "consider all of the evidence in the case record, including the person's daily

activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms"… "if objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms." 77 Fed. Reg. at 43643. Here, the ALJ wrote "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." (R. 20-21). He then proceeded to discuss the case record.

The ALJ found that while Plaintiff has impairments that can be anticipated to produce pain and functional limitations, the record did not demonstrate that she has the sort of problems that are normally associated with the intense and disabling pain from which she claimed to be suffering, such as a significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, difficulty ambulating, or reflex abnormalities. (R. 25). The medical records generally showed that Plaintiff had no joint swelling;[2] no limitation of motion of any joint; normal reflexes; no sensory deficits; no difficulty getting on or off the exam table; no difficulty performing manipulations with her hands including opening a door, picking up items,

---

[2] It is interesting to the Court that Dr. Zumwalt did not include fibromyalgia as one of the Plaintiff's medical conditions in the Multiple Impairment Questionnaire he completed for the Plaintiff (R. 349- 566) but did include osteoarthritis. Osteoarthritis symptoms include pain, swelling and tenderness in joints. *See Dorland's Illustrated Medical Dictionary* 152 (32st ed. 2012).

buttoning, and zipping. X-rays of the Plaintiff's hand were found to be unremarkable with no erosions, lesions, or decrease in joint space. (R. 409). She exhibited the ability to walk with a normal gait, tandem walk, walk on her toes and heels, squat and arise; and to walk without an assistive device. (R. 378-79). She also exhibited the highest level of grip strength in both hands, five out of five and five out of five strength in the upper and lower extremities, as well as normal reflexes. (R. 383, 400). The ALJ stated in several places in his decision that these functional abilities were consistent with the ability to perform a very broad range of light work. (R. 20-24).

Plaintiff's treatment notes contain her doctor's notations of her subjective complaints but few objective findings. For example, an x-ray taken of the lumbar spine showed loss of the normal lordosis, and pronounced diminution in disc height with sclerosis at L5-S1 with facet hypertrophic change. (R. 411). This indicates Plaintiff was suffering from a stiffening of her back and a degeneration of joints near her spine. But although the ALJ factored these limitations into her RFC, he concluded these findings alone did not sufficiently support Plaintiff's alleged level of limitations, given all of her functional abilities discussed above. This was a conclusion he was entitled to make. *See* Social Security Ruling 16-3p, 81 Fed. Reg. 14168 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record….

We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.") . The ALJ found the Plaintiff was limited to light work with no more than frequent manipulative functions.

Plaintiff also has a history of hypertension, GERD, Epstein Barr virus, asthma, and removal of thyroid nodules. The ALJ is correct that there is no indication in her medical record that these limitations were disabling either singly or in combination. Her hypertension appears to be under control with medication, as her treatment notes do not disclose her blood pressure readings to be of any concern to her treating physician, nor show that she is suffering other debilitating effects of hypertension. Plaintiff also takes medication for GERD and her records do not demonstrate she suffers any ongoing symptoms or complications relating from this condition. Her treatment has also been conservative, with no surgeries or other invasive procedures recommended. Similarly, her records do not show that her Epstein Barr virus has brought about any active infections at any time since her alleged onset date. In February 2012, Plaintiff did complain of severe malaise and tender glands, sore throat and a history of Epstein Barr virus for which she was advised to use antibiotics, Robitussin with codeine, a vaporizer, and rest (R. 314). She was not required to undergo hospitalization or any sort of aggressive treatment. It also appears she recovered from this condition, as the record reflects no follow up visits with complaints of continued symptoms.

Plaintiff underwent surgery in November 2011 to remove thyroid nodules (R. 427-29) and within a week after surgery she reported she was doing well and happy with the results of the surgery. (R. 428). In January 2012, Plaintiff reported that her symptoms were better after switching to brand name medications. (R. 316). Plaintiff also suffers from asthma but it is also not totally disabling. The claimant is not on an oxygen tank, and there is no evidence of frequent emergency room visits or hospital treatment for respiratory problems, which is inconsistent with severe asthma symptoms precluding all work activity. At several visits to a doctor, her lungs were noted to be clear with no cough, tightness of chest, shortness of breath or wheezing. (R. 279, 319, 400).

The ALJ also discussed Plaintiff's daily activities and here is where the cracks in the accurate and logical bridge an ALJ is supposed to build between the evidence and the conclusion began to reveal themselves. Plaintiff's hearing testimony (R. 34-55) and Function Report (R. 186-196) demonstrate she is able to drive occasionally, grocery shop and run other errands with the help of her husband, maintain her own hygiene, supervise her mother who had a stroke, prepare meals, do laundry without folding clothes, and dust. She stated that her husband does many of the household chores, but she also stated that he travels sometimes for as long as a week at a time, leaving her alone with her elderly mother. In such situations she "gets her ducks in a row" before he leaves. The Court takes that to mean that she either takes measures or directs her husband to take measures such that she does not need him while he is gone. She fixes cereal for herself and her mother in the morning and they both lie back

down. They fix lunch together and they do housecleaning together. Some days she is not able to dust. Plaintiff stated she cannot lift a bag of sugar or open a jar. Dr. Ausfahl recorded Plaintiff's grip strength at the highest level. (R. 583). That is inconsistent with the claim that one cannot open a jar or grasp anything. (R. 50). Moreover, Plaintiff conceded that she was exercising daily by walking and swimming one year after her alleged disability onset date in 2010 (R. 326) and three years after she says she actually became disabled in 2008 (R. 38). The ALJ also found this to be inconsistent with Plaintiff's hearing testimony of staying inside and napping all day due to pain.[3]

The problem is that the ALJ did not explain how the Plaintiff's ability to perform the daily activities she testified she could perform (only with substantial assistance from her husband and stroke-suffering mother) translated to the demands of a full-time job. *Ghiselli v. Colvin*, No. 14-2390, 2016 WL 4939535, at *5 (7th Cir. Sept. 16, 2016) ("without acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use Ghiselli's successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible.") citing *Moore v. Colvin,* 743 F.3d 1118, 1125 (7th Cir. 2014). The ALJ stated in general terms several times that Plaintiff's functional abilities were consistent with the ability to perform a very broad range of light work. (R. 20-24). However, the Court was not able to locate an actual discussion

---

[3] It is frustrating that the ALJ did not attempt to clarify the times at issue here. It seems that Plaintiff's testimony of staying inside and napping all day due to pain refers to a separate time period than when she would walk and swim on a daily basis.

of how those generally-stated conclusions were reached. The absence of such discussion warrants a remand. *See Ghiselli*, 2016 WL 4939535.

Plaintiff argues that the ALJ's findings are the sort that Seventh Circuit cases, such as *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996), have remanded for reconsideration. The Court finds that even though the ALJ here did not make the type of "illogical and erroneous statements" that the ALJ made in *Sarchet*, he nevertheless made some crucial errors. For example, in *Sarchet*, the ALJ criticized the plaintiff for having consulted a rheumatologist for her fibromyalgia rather than an orthopedist, neurologist, or psychiatrist. *Id.* The *Sarchet* court noted that fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist. Thus, taking a fibromyalgia patient to task for seeing a rheumatologist was patently incorrect and reflected that the ALJ had no comprehension of how to analyze claims of fibromyalgia impairment. Here, the ALJ did not commit such a grievous error. He noted that Plaintiff <u>failed</u> to see a rheumatologist and he discounted Dr. Zumwalt's opinion, *inter alia*, because he is not a rheumatologist. The record demonstrates that someone at Dr. Zumwalt's office mentioned to Plaintiff that she should see a rheumatologist in August of 2012. (R. 397). It is difficult for this Court to comprehend how Plaintiff could have been suffering from debilitating pain since 2008 due to fibromyalgia sufficient to keep her from working and her treating physician who stated he had been seeing her every three months since April of 1995 (R. 349) did not mention to her it would be worthwhile to see a rheumatologist until August 2012. The natural deduction is that her symptoms were not as debilitating as alleged.

Nevertheless, another very troubling aspect of the ALJ's decision was his repeated remarks that Dr. Zumwalt's opinion relied heavily on the Plaintiff's subjective reports of symptoms and limitations instead of on objective medical evidence. Of course it did. As the Seventh Circuit has explained, when analyzing claims of fibromyalgia, one should be cognizant that "its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness...." *Sarchet*, 78 F.3d at 306-7. This is what Plaintiff alleged she suffered.[4] Given that understanding, the Court does not understand why the ALJ in this case found it so meaningful that Plaintiff's physical limitations were not supported by <u>objective</u> medical findings. As discussed earlier, the ALJ considered Plaintiff's daily activities in addition to the objective medical evidence and found her activities to be inconsistent with someone claiming to be suffering from consistent debilitating pain. But, as also discussed above, the ALJ's discussion of Plaintiff's daily activities was incomplete in light of Seventh Circuit case law.

The ALJ also took note that Dr. Zumwalt recommended that Plaintiff engage in regular walking at least four times a week in response to Plaintiff's complaints that she continued to suffer back pain and that her arms, hands, legs, feet and headaches had not improved since her last visit. (R. 438, 443). He expressed

---

[4] Moreover, there is objective medical evidence in the record that Plaintiff had tenderness in several points on her body and an x-ray taken of the lumbar spine showed loss of the normal lordosis, and pronounced diminution in disc height with sclerosis at L5-S1 with facet hypertrophic change. (R. 411). This indicates Plaintiff was suffering from a stiffening of her back and a degeneration of joints near her spine.

skepticism that her treating physician would make such recommendations if Plaintiff's limitations were as serious as she claims. This skepticism is unsubstantiated and clearly erroneous because routine exercise is a common treatment option recommended to people who are diagnosed with fibromyalgia. *See* http://www.webmd.com/fibromyalgia/guide/fibromyalgia-and-exercise. So the Court cannot accept that Dr. Zumwalt's recommendation that Plaintiff engage in regular walking belied her claims that her fibromyalgia caused her debilitating and pain and fatigue.

Similarly, the ALJ noted that Plaintiff has not generally received the type of medical treatment one would expect for an individual experiencing debilitating pain. Her treatment has been essentially routine and conservative in nature, and has consisted of medication, ice massages, and recommendations to perform range-of-motion and muscle strengthening exercises, walking, as well as to perform activities that do not exacerbate pain; no physical therapy, injections, or surgery has been discussed or recommended. (R. 396, 443). As the Plaintiff points out in her brief, some appellate courts from other jurisdictions have noted that there is no treatment for fibromyalgia. (Doc. 10 at 13-14 (collecting cases)). The Court does not understand the ALJ's reliance on this point. The record showed Plaintiff was on pain alleviating medications like Tramadol and other drugs routinely prescribed to fibromyalgia sufferers, Cymbalta for example. Furthermore, ice massages are part of physical therapy. *See* http://www.webmd.com/fibromyalgia/guide/fibromyalgia-and-physical-therapy. Plaintiff did not undergo any surgeries or injections related to her purported

pain from her fibromyalgia and she was not advised to even see a rheumatologist until four years of allegedly suffering debilitating pain from fibromyalgia. In short, the ALJ did not explain what treatments he would expect to see prescribed for a typical fibromyalgia sufferer that the Plaintiff failed to undergo. Thus, there is no basis for the ALJ's suspicions that Plaintiff's statements concerning the intensity and persistence of her symptoms were not credible.

It seems that the ALJ's view of Plaintiff was greatly affected by her admission that she took a paycheck while performing no work for two years. He wrote "the claimant's voluntary receipt of putative wages for two years while not actually working does not reflect favorably on her credibility." (R. 21). The unstated implication that the Court takes away from the ALJ's comment is that he believed the Plaintiff to be dishonest and thus more likely than not to exaggerate her statements concerning her pain and limitations in efforts to secure disability payments.

However, as the Seventh Circuit has recently explained, the ALJ is to focus on the credibility of the claimant's assertions of pain, not the claimant's general character. *Cole v. Colvin*, No. 15-3883, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016), *see also* SSR 16-3p, 81 Fed. Reg. at 14171 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on. . .

whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."). Thus, the ALJ was incorrect to rely on Plaintiff's overall credibility in his analysis. If he had reason to discredit her assertions of pain and her limitations because of her taking paychecks for no work, then he should have better explained how her past actions undermined her current assertions regarding her symptoms.

In short, the ALJ incorrectly attributed Plaintiff's overall character to his analysis of her assertions of pain and limitations under the current law. He also placed undue reliance on the Plaintiff's limited daily activities and failed to explain how her ability to perform those activities translated to performing the demands of a full-time job. He also relied on faulty premises in assessing her lack of objective medical evidence, medications, and treatment for fibromyalgia. He did not properly take into account that when assessing fibromyalgia, subjective complaints are especially significant because there are not many other clinical indicators of the effects of the disease on the claimant. Consequently, the ALJ failed to adequately consider Plaintiff's functional limitations.

After considering the record as a whole, this Court cannot uphold the ALJ's credibility finding. However, the Court does not disagree with the ALJ's treatment of Dr. Zumwalt's opinion and conclusions. There may be enough evidence in the record to support a conclusion that Plaintiff was not disabled during the relevant period but the ALJ failed to build an accurate and logical bridge between the evidence and the result, and committed significant logical and legal errors in reaching his conclusion.

*Sarchet*, 78 F.3d at 307 ("we cannot uphold a decision be an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact does not.")

## CONCLUSION

For the reasons set forth above, Plaintiff Susan Gail Brown's Motion for Summary Judgment (Doc. 9) is GRANTED in part, and the Commissioner's Motion for Summary Affirmance (Doc. 14) is DENIED. The Court finds that substantial evidence did not support the finding that Brown was not disabled. Accordingly, the Court REVERSES the decision of the Commissioner, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Court remands the case for rehearing. CASE TERMINATED.

Entered this 27th day of September, 2016.

s/ Joe B. McDade
JOE BILLY McDADE

United States Senior District Judge

25